Giovanni Orantes, SBN 190060
**THE ORANTES LAW FIRM, P.C.**
3435 Wilshire Blvd., Suite 2920
Los Angeles, CA 90010
Telephone:  (213) 389-4362
Facsimile:  (877) 789-5776
go@gobklaw.com

Counsel for TZU LING HSU also known as JENNY HSU

Philip E. Koebel, SBN 249899
**KOEBEL LAW OFFICES**
P.O. Box 94799
Pasadena, CA  91109
Ofc:   1015 N. Lake Ave., Ste. 210
            Pasadena, CA  91104
Telephone:   (626) 629-8199
Facsimile:   (626) 410-1149
LawOfPEK@gmail.com

Counsel for LI HSIU-CHU HSU

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| TZU LING HSU also known as JENNY HSU, an individual; LI HSIU CHU HSU, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>AIM United, LLC, a California limited liability company; MTC Financial, Inc. doing business as Trustee Corps, a California corporation; PennyMac Holdings, LLC, a Delaware limited liability company; PennyMac Loan Services, LLC, a Delaware limited liability company; Harmony Title Agency, Inc., a Nevada corporation; DCB United, LLC, a California limited liability company; Strategic Acquisitions, Inc., a California corporation; Grace Hsu, an individual; Brian Angel, an individual; Peter Baer, an individual, Brett Cyprus, an | Case No.<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF FOR:**<br>1.  **VIOLATION OF ANTI-TRUST STATUTES – Sherman & Clayton Acts, 15 U.S.C. §§ 1, 15;**<br>2.  **VIOLATION OF CALIFORNIA ANTI-TRUST STATUTES – Cartwright Act, Cal.Bus. & Prof. Code § 16700 et seq.**<br>3.  **VIOLATION OF UNFAIR COMPETITION STATUTES – Cal.Bus. & Prof. Code § 17200, et seq.;**<br>4.  **VIOLATION OF** |

individual, Anchor Loans, LP, a Delaware Limited Partnership, a California corporation; Anchor Assets II LLC; a California limited liability company; Erika Garcia, an individual; Antoine King, an individual; Mike Perez, an individual; and, DOES 1-10,

Defendants.

5. AUTOMATIC STAY; TURNOVER UNDER 11 U.S.C. § 542;
6. AVOIDANCE OF TRANSFER OF ESTATE ASSETS UNDER 11 U.S.C. § 544 AND CALIFORNIA CIVIL CODE §§ 3439, ET SEQ. AGAINST ALL DEFENDANTS;
7. AVOIDANCE OF UNAUTHORIZED POST-PETITION TRANSFER OF ESTATE ASSETS UNDER 11 U.S.C. § 549;
8. PRESERVATION OF AVOIDANCE UNDER 11 U.S.C. § 550;
9. SLANDER OF TITLE;
10. QUIET TITLE;
11. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2924h(g)
12. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2924(a)(6)
13. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.55(b)(B); AND,
14. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs, Tzu Ling Hsu and Li Hsiu Chu Hsu, allege:

## THE PARTIES

1.      Plaintiff, Tzu Ling Hsu also known as Jenny Hsu (hereinafter sometimes referred to as "Plaintiff Jenny Hsu") is an individual then and now, and is a resident of Los Angeles County, California.

2.     Plaintiff, Li Hsiu-Chu Hsu (hereinafter sometimes referred to as "Li Hsu" or "Mrs. Hsu") is an individual then and now, and is not a resident of Los Angeles County, California.  She is a resident of Hsinchu County, Taiwan.  Plaintiff Jenny Hsu and Plaintiff Li Hsu are collectively referred to as "Plaintiff".

3.     Defendant AIM United, LLC (hereinafter sometimes referred to as "Defendant AIM"), is a California limited liability company then and now, and at all times relevant to the claims pled in the Complaint has been doing business in the County of Los Angeles, California.

4.     Defendant MTC Financial, Inc. doing business as Trustee Corps (hereinafter sometimes referred to as "Defendant MTC"), is a California corporation then and now, and at all times relevant to the claims pled in the Complaint has been doing business in the County of Los Angeles, California.

5.     Defendant PennyMac Holdings, LLC (hereinafter "Defendant PennyMac Holdings"), is a Delaware limited liability company then and now, and at all times relevant to the claims pled in the Complaint has been doing business in the County of Los Angeles, California.

6.     Defendant PennyMac Loan Services, LLC (hereinafter referred to as "Defendant PennyMac"), is a Delaware limited liability company then and now, and at all times relevant to the claims pled in the Complaint has been doing business in the County of Los Angeles, California.

13.   Defendant Brett Cyprus (hereinafter sometimes referred to as "Defendant Cyprus") is an individual then and now, and at all times relevant to the claims pled in the Complaint has been a resident of Los Angeles County, California.

14.   Defendant Peter Baer (hereinafter sometimes referred to as "Defendant Baer") is an individual then and now, and at all times relevant to the claims pled in the Complaint has been a resident of Los Angeles County, California.

15.   Defendant Erika Garcia (hereinafter sometimes referred to as "Defendant Garcia") is an individual then and now, and at all times relevant to the claims pled in the Complaint has been a resident of Los Angeles County, California.

16.   Defendant Antoine King (hereinafter sometimes referred to as "Defendant King") is an individual then and now, and, on information and belief, at all times relevant to the claims pled in the Complaint has been a resident of Los Angeles County, California.

17.   Defendant Mike Perez (hereinafter sometimes referred to as "Defendant Perez") is an individual then and now, and, on information and belief, at all times relevant to the claims pled in the Complaint has been a resident of Los Angeles County, California.

18.   Defendant AIM, Defendant DCB, Defendant SAI, Defendant Angel, Defendant Baer, Defendant Cyprus, Defendant Garcia, Defendant King and

7.    Defendant Harmony Title Agency, Inc. (hereinafter sometimes referred to as "Defendant Title Company"), is a Nevada corporation then and now, and at all times relevant to the claims pled in the Complaint has been doing business in the County of Los Angeles, California.

8.    Defendant MTC, both Defendants PennyMac, Defendant Title Company are hereinafter referred to as the "FORECLOSING DEFENDANTS").

9.    Defendant Grace Hsu (hereinafter sometimes referred to as "Defendant Grace Hsu") is an individual then and now, and at all times relevant to the claims pled in the Complaint has been a resident of Los Angeles County, California.

10.    Defendant DCB United, LLC, (hereinafter sometimes referred to as "Defendant DCB"), is a California limited liability company then and now, and at all times relevant to the claims pled in the Complaint has been doing business in the County of Los Angeles, California.

11.    Defendant Strategic Acquisitions, Inc. (hereinafter sometimes referred to as "Defendant SAI"), is a California corporation then and now, and at all times relevant to the claims pled in the Complaint has been doing business in the County of Los Angeles, California.

12.    Defendant Brian Angel (hereinafter sometimes referred to as "Defendant Angel") is an individual then and now, and at all times relevant to the claims pled in the Complaint has been a resident of Los Angeles County, California.

Defendant Perez sometimes will be referred collectively as the BID-RIGGING DEFENDANTS.

19.     Defendant Anchor Loans, LP (hereinafter sometimes referred to as "Defendant Anchor Loans"), is a Delaware Limited Partnership then and now, and at all times relevant to the claims pled in the Complaint has been doing business in the County of Los Angeles, California.

20.     Defendant Anchor Assets II LLC (hereinafter sometimes referred to as "Defendant Anchor Assets"), is a California limited liability company then and now, and at all times relevant to the claims pled in the Complaint has been doing business in the County of Los Angeles, California.

21.     Plaintiff is unaware of the true names and capacities of those Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when such have been ascertained.   Plaintiff is informed and believes and thereon alleges that each DOE Defendant claims some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiff's title and their claims, and each of them, and that the same may constitute a cloud on Plaintiff's title to that property or that each DOE Defendant contributed to or caused damage suffered by Plaintiff and/or that each DOE Defendant acted as the principal, agent, employer, employee, alter ego, co-conspirator, and/or aider and

abettor of each named Defendant and/or other DOE Defendant. Plaintiff is informed and believes that these DOE Defendants have no right, title, estate, lien, or interest whatever in the real property, or any part thereof and that each of the named and fictitiously named Defendants are liable for damages alleged by Plaintiff in the above-entitled complaint, if any, and for the defense and indemnification of the Plaintiff. Hereinafter, at various time throughout the Complaint, the BID-RIGGING DEFENDANTS, the remaining named Defendants and DOES 1 through 20, may be referred to collectively as "Defendants".

22. Plaintiff is informed and believes and upon that basis alleges that, except as to Defendant MTC and Defendant PennyMac, which were not agents, nominees, delegatees, servants, employees, or legal representatives of each other or of Bank of America, N.A. only with respect to implementing or in any form actually satisfying the requirements under California law to commence and/or complete a non-judicial foreclosure sale, the Defendants, and each of them, at all times herein mentioned, acted as the agents, servants, employees, legal representatives, and/or co-conspirators of the Defendants, and each of them, and that all of such Defendants acted in concert and participated and furthered the wrongs herein set forth, and with the knowledge, permission, consent, notification, and adoption of the Defendants, and each of them.

**JURISDICTION AND VENUE**

23.     Jurisdiction and venue are proper in this Court under 28 U.S.C. § 1331 because this Complaint relates to the violation of Anti-Trust Statutes of the United States of America – 15 U.S.C. §§ 1, 15 as well as to an asset of the above-captioned bankruptcy estate of which this Court has exclusive jurisdiction under 28 U.S.C. § 1334(e) and also includes claims over which the Court has supplemental jurisdiction under 28 U.S.C. § 1367, such as a claim for violation of the equivalent California anti-trust statute, California's unfair competition statutes, for violation of the automatic stay, turnover of estate property, avoidance of unauthorized post-petition transfer of estate assets and causes of action for slander of title and quiet title to the estate's real property located in Los Angeles, California, within the County of Los Angeles.

**GENERAL ALLEGATIONS**

24.     Plaintiff is a sole owner of a real property, which is the subject of this action, located at 2075 Lombardy Road, San Marino, Los Angeles County, California 91108.  The previous owner was the Plaintiff's mother, Li Hsiu-Chu Hsu ("Mrs. Hsu"), who acquired the Property in 1997 and paid off all loans against it

until many years later in 2009 she obtained a loan secured by such property.  The

real property is identified as Assessor's Parcel No. 5329-006-020 (the "Property")

and more particularly described as follows:

> "THE EASTERLY 115 FEET OF LOT 68 OF ARDENGROVE
>
> TRACT, IN THE CITY OF SAN MARINO, COUNTY OF LOS
>
> ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED
>
> IN BOOK 80, PAGE(S) 26 OF MAPS, IN THE OFFICE OF THE
>
> COUNTY RECORDER OF SAID COUNTY".  COMMONLY
>
> KNOWN AS 2075 Lombardy Road, San Marino, Los Angeles County,
>
> California 91108  Having a Tax Assessor Number of 5329-006-020

25.     Plaintiff owns full beneficial title to the Property.  The property was

transferred to Plaintiff by a Grant Deed executed and delivered to Plaintiff in Taiwan

during Chinese New Year (which lasts seven (7) days) on February 12, 2013 by her

mother, Mrs. Hsu, which was effective although it was not notarized nor recorded at

the time.

26.     Thinking that the world needed to get notice of the transfer by

recordation of a transfer, which requires notarizing such grant deed, the Property

was the subject of a further Grant Deed executed and witnessed in Morocco on April

28, 2015 by Chia L. Hsu also known as Alice Hsu, Plaintiff's sister, as agent to Mrs.

Hsu under authority of a power of attorney dated August 17, 2009 witnessed on

August 26, 2009 and a further power of attorney executed on March 2, 2015 by Plaintiff's mother, Mrs. Hsu (the "April 2015 Grant Deed"). Two copies of the April 2015 Grant Deed were executed. One of the copies of the April 2015 Grant Deed was addressed to and delivered via international mail to Plaintiff and a second copy was delivered to Gabriela Sandoval who delivered it for recordation to the Recorder of the County of Los Angeles but such recorder rejected it for recordation ostensibly because it was fastened permanently with a circular fastener. To effect a recordation of the transfer of the Property to Plaintiff, the transfer to Plaintiff was executed again by Alice Hsu at her mother's request as her agent and duly witnessed by a notary again on June 26, 2015, but was prepared by a third party and omitted Plaintiff's last name.

27.     After such omission was noticed, a grant deed was prepared again by such third party, but indicated that the transfer to Plaintiff was as a joint tenant, and was executed by Alice Hsu at her mother's request on June 26, 2015 and was notarized. Such Grant Deed was recorded and bears Los Angeles County Recorder's Document Number 20150772316.

28.     Unfortunately, as the notary testified at his deposition, even though Chia Lien Hsu, also known as Alice Hsu, presented her personal identification documents to the notary identifying her as Chia Lien Hsu, also known as Alice Hsu, such notary mistakenly indicated that the person who was present and signed the

second June 26, 2015 grant deed was Mrs. Hsu (the "Recorded June 2015 Grant Deed").

29.    To avoid any confusion, Mrs. Hsu executed personally in Taiwan on October 30, 2015 (Taiwan time) two original grant deeds which, like the original 2009 Deed of Trust, were witnessed by a Special Notary and are substantively identical and further evidence the transfer of the entirety of the fee simple interest in the Property to Plaintiff. By virtue of her vested legal interest in title, the Plaintiff is entitled to file this Complaint for avoidance and to quiet title.

30.    Defendant MTC served as the foreclosure trustee for the foreclosure auction sales initiated by Defendant PennyMac (Delaware entities) and owes a fiduciary duty to obtain the highest possible purchase price for the Property at a foreclosure sale.

31.    The BID-RIGGING DEFENDANTS at such foreclosure auction sales, who communicated with a single bidder via telephone (that is, used a facility of and in interstate commerce), assumed a role integral to and inseparable from the interstate sale of property in that, among other things, title certificates, advertising, financing, and other related goods and services generated by transaction would pass state lines.  *U.S. v. Romer*, 148 F.3d 359 (1998).

32.    Before the July 7, 2015 foreclosure auction sale further discussed below, on October 29, 2014, Defendant Grace Hsu bid $5,020,000 at a public

foreclosure auction sale the Property <u>after</u> Plaintiff's Mother, Mrs. Hsu, had filed a case for protection under Chapter 13 of the Bankruptcy Code, which, pursuant to Section 301 of the Bankruptcy Code operated as a stay under Section 362(a). Plaintiff attended such foreclosure auction sale and personally gave verbal notice to the crier of the automatic stay.  Therefore, such purchase was void under *In re Schwartz*, 954 F.2d 569, 571-72 (9th Cir. 1992).

33.     In any event, Defendant MTC refused to deliver the Trustee's Deed Upon Sale to Defendant Grace Hsu and rescinded the sale.

34.     On March 1, 2015, after Mrs. Hsu believed she had arranged to borrow sufficient funds to reinstate the loan with Defendant PennyMac.

35.     Mrs. Hsu was instead the subject of a scheme to instead pay her $1,000,000 plus reinstatement and payment in full of the loan in exchange for the Property, which would have represented a loss of over $2,000,000.

36.     Mrs. Hsu filed again for protection under Chapter 13 of the Bankruptcy Code at the advice of counsel.  Mrs. Hsu made a Chapter 13 plan payment for over $17,000 to cure the arrears on the loan through the Chapter 13 plan.  Unfortunately, her counsel allowed the automatic stay that arose by the filing of such petition to expire under Section 362(c)(3) of the Bankruptcy Code before filing a timely motion to extend such stay within 30 days of the filing of the petition.  This required Mrs.

Hsu to pursue her reorganization in a new bankruptcy case or outside of the bankruptcy system.

37.     However, Mrs. Hsu then decided to either sell her house to her daughter, Chia Lien Hsu also known as Alice Hsu or cure any default through a Chapter 13 plan of reorganization.

38.     On July 1, 2015, Jenny Hsu filed her voluntary petition for relief under Chapter 11 of the Bankruptcy Code, Case No. 2:15-bk-20572-NB. She is in possession and operates her property under Section 1107 of Title 11 of the United States Code (hereinafter, the "Bankruptcy Code").

39.     Although Plaintiff Jenny Hsu filed this Bankruptcy Case in a good faith effort to reorganize the claims against her and her Property, she did file her Bankruptcy Case to prevent foreclosure of her Property, which is permitted by well-established as well as recent Ninth Circuit law binding on this Court under *In re Blendheim, 803 F.3d 477 (9th Cir. Oct. 1, 2015).*

40.     As previously mentioned, the aforementioned transfer via a grant deed of the Property to Jenny Hsu by Mrs. Hsu that occurred on the 2013 Chinese New Year's celebration, which lasts 7 days, was effective because it contained granting language, was signed by Mrs. Hsu and was delivered by Mrs. Hsu to Plaintiff Jenny Hsu.  This led to the filing for a case under Chapter 11 by Jenny Hsu.

41.     Plaintiff, through counsel, provided to Defendant MTC as well as to Defendant PennyMac written notice of the Automatic Stay by letter faxed on July 1, 2015.  Andrea Castro, a member of counsel's staff, contacted Defendant MTC's offices by telephone prior to the time of the sale to ensure that no foreclosure sale took place on July 2, 2015.  Initially, Defendant MTC, through Erin Allinder, stated that the foreclosure sale would be proceeding because no document linked this Bankruptcy Case to the Property; however, after Plaintiff's counsel provided a copy of the Recorded June 2015 Grant Deed, Defendant MTC postponed the foreclosure sale to July 7, 2015 at 9:00 A.M., three (3) days after the Independence Day holiday.

42.     On July 2, 2015, Peter Baer's company, Defendant SAI sent a "driver" named "Koko" to inspect the Property and take pictures of it, which he did.  Koko reported that the Property had a value of $7 Million on July 2, 2015.

43.     On July 7, 2015, Andrea Castro, a member of counsel's staff, again contacted Defendant MTC's offices by telephone prior to the time of the sale to ensure that no foreclosure sale took place on July 7, 2015.  However, Defendant MTC went ahead with an auction of the Property on July 7, 2015 without first requesting authorization from the Bankruptcy Court and the successful bidder bid either $4,205,000 or $4,200,000 but Defendant MTC alleges that it sold it to Defendant AIM for $4,200,000 (the "Foreclosure Sale").  Defendant AIM, through

representatives, has testified in Court proceedings that it also purchases properties at foreclosure auctions for third parties.

44.    The Defendants were determined to swoop in and steal the Property (and the over $3 Million in equity) from Jenny Hsu.  To do so, Defendants Brian Angel, Brett Cyprus, and Peter Baer, on their own behalf or on behalf of entities of which they are co-conspirators (including Defendant Grace Hsu), owners, principals, officers and/or employees communicated with each other by means of interstate commerce, i.e., mobile telephone communications, and with Defendant Garcia, a bidder employed by 6 Angels, LLC (which is the organization to which Brian Angel belongs with his parents and siblings) and/or Defendant DCB to present a single bid for the Property.

45.    According to Defendant Garcia, Defendant DCB cuts her paychecks but shares the same office as 6 Angels, LLC. The BID-RIGGING DEFENDANTS agreed to make a single bid for the Property despite the fact that they each had separate bidders present at the auction, Defendants King and Perez, in addition to Defendant Garcia. After she prevailed at the auction for the bid amount of $4,200,000 (or $4,205,000), the bidders for Defendants Cyprus and Baer, Defendants King and Perez, turned over to Defendant Garcia money in the form of cashiers' checks from their bags to make up the difference between the $3,000,000 Defendant Garcia testified she carried with her and $4,200,000.

46.     In addition, the BID-RIGGING DEFENDANTS conspired to and agreed that Defendant Garcia would bid for the Property and Defendant Grace Hsu, like the other BID-RIGGING DEFENDANTS, agreed to let Defendant Garcia bid for the Property and agreed to refrain from bidding, like she had done in October 2014, to purchase the Property for a lower price in exchange for giving Defendant Grace Hsu a one quarter ownership of the Property, which they did on or about the same day of the purchase.

47.     According to documents produced during discovery in Bankruptcy Case No. 15-bk-20572-NB, Defendant MTC, despite its knowledge of the automatic stay, agreed to deliver the Trustee's Deed Upon Sale to Defendant AIM and profited from such transaction by holding and earning interest on the $4,200,000 purportedly delivered to Defendant AIM on July 7, 2015.

48.     On July 10, 2015, Erin Allinder sent to Defendant Angel the following email message:

> It is my understanding that you would like the opportunity to
>
> pursue annulment of the stay.  If this is correct, please confirm
>
> AIM United, LLC and its successors and assigns will hold
>
> harmless the lender and trustee and waive any claim to lost
>
> interest or reimbursement of expenses in the event the court
>
> does not grant annulment of the stay.

49.     Defendant Angel agreed on behalf of Defendant AIM seven (7) minutes later as follows: "Yes we will hold you harmless and take responsibility for all cost."

50.     To the extent necessary, the Plaintiff is prevented from filing one of the grant deeds duly executed by her mother on October 30, 2015 by the unauthorized acts of the Defendants which have slandered title to the Property and purport to transfer the Property to Defendant AIM as further detailed below.

51.     The information regarding the conspiracy to and agreement to have Defendant Garcia bid while the other BID-RIGGING DEFENDANTS refrained from bidding was obtained as deposition testimony from Defendant Angel, Defendant Cyprus, Defendant Baer and Defendant Garcia obtained in brief expedited discovery conducted in preparation for an evidentiary hearing on a motion for relief from the automatic stay filed by Defendant AIM and one filed by Defendant MTC.

52.     Although the Court granted the motions for relief from stay after dispensing with an evidentiary hearing because it granted a motion for evidentiary sanctions against Plaintiff preventing further testimony by Mrs. Hsu and striking all documents signed by or on behalf of Mrs. Hsu because (1) Mrs. Hsu could testify only approximately 4 hours before collapsing and having to be transported via ambulance to the hospital for overnight treatment and (2) Defendant AIM refused to accommodate Mrs. Hsu by delaying the start of the second day of her deposition for

later that same day despite the offer by the Plaintiff to defray the costs of conducting Mrs. Hsu's deposition if conducted later than the time at which Defendant AIM had unilaterally scheduled it.  Plaintiff filed a motion to reconsider the entry of the orders granting relief from stay and the evidentiary sanctions.  However, the Court heard and denied such motion to reconsider but indicated that an action to set aside the foreclosure based on collusion or otherwise could be prosecuted separately from the Chapter 11 bankruptcy case.  The two orders granting relief from stay and the two orders granting evidentiary sanctions are currently on appeal.  Although the Bankruptcy Court granted a stay of all its foregoing four orders for several days, the Bankruptcy Court also denied further motions for stay pending appeal after the December 15, 2015 hearing on the motions for reconsideration.

53.    Plaintiff reserves the right to amend this complaint to set aside the Foreclosure Sale under applicable State law on the basis that Defendant AIM did not pay to Defendant MTC the amount that it bid at the auction sale. Even though Defendant MTC claims that it received incorrect information from Defendant Harmony and proceeded to foreclose in the mistaken belief that the Plaintiff's bankruptcy case did not stay its foreclosure proceeding, Defendant MTC had actual notice that the bankruptcy petition of Plaintiff impacted the Property because several services, such as ForeclosureRadar.com, now known as PropertyRadar.com, already

reported on July 7, 2015 the transfer to Tzu Ling Hsu effected by the Recorded June 2015 Grant Deed.

54.     The purported Foreclosure Sale was confirmed a couple of hours later on July 7, 2015, when Plaintiff's counsel received a telephone call from a man calling himself "Michael Johnson," who called Plaintiff's counsel from an unlisted telephone number and informed counsel that he was the third party purchaser of the Property and that Defendant MTC took his cashier's check despite knowing of the bankruptcy stay, but had not yet issued a Trustee's Deed Upon Sale.

55.     The foregoing events evidence a willful and intentional violation of the automatic stay by Defendant MTC and Defendant PennyMac and Debtor's counsel demanded immediate rescission by a letter to Defendant MTC and Defendant PennyMac dated July 8, 2015. This notice of stay violation could not be sent to the purported purchaser at that time because "Michael Johnson" had refused to provide contact information or identify the name of his organization. "Michael Johnson" telephoned counsel's office several times and also telephoned the real estate agent for the Plaintiff, Gabriela Sandoval on more than one occasion.

56.     Even though he denied it during his deposition, Plaintiff is informed and believes that "Michael Johnson" is Defendant Baer whose voice is very recognizable, one of the managing members, either individually or through a business entity under his control, of Defendant AIM.

57.     The fair market value of the Property was approximately no less than $8,000,000.00.  At the time of the Foreclosure Sale, the Property's value was considered to be no less than between $6.5 Million to $7 Million by the principals of Defendant AIM and substantially more than that by Plaintiff.  It is clear that the final sales price will far exceed the outstanding balance due to Defendant PennyMac Holdings (if it actually holds the Promissory Note).

58.     Defendants Angel and Garcia are employees and/or principals of Defendant DCB are associated with each other and maintain a separate location from the other defendants (the "Angel Defendants").

59.     Defendant Cyprus also operates out of a separate physical location than the other defendants with the exception of either Defendant King or Perez, one of whom is employed by Defendant Cyprus through one of the entities with which he is affiliated, is employed by and/or owns directly or indirectly (the "Cyprus Defendants").

60.     Defendant Baer is an employee or principal of Defendant SAI and operates out of a separate physical location than the other defendants with the exception of either Defendant King or Perez, one of whom is employed by Defendant Baer through one of the entities with which he is affiliated, is employed by and/or owns directly or indirectly ("Baer Defendants").

61.     Each of the Angel Defendants, Cyprus Defendants and Baer Defendants each maintain their own separate operations and have completed tens or hundreds of acquisitions at foreclosure auction sales for themselves over the last few decades.

62.     Defendant AIM has completed dozens of acquisitions at foreclosure auction sales since its inception, all of which appear to be collusive.

63.     Defendant AIM filed a motion for relief from stay on July 14, 2015 asking for retroactive annulment of the automatic stay to validate the foreclosure sale, claiming ignorance of the automatic stay.

64.     Prior to the Foreclosure Sale, Plaintiff is informed and believes that Defendant Grace Hsu was aware that the foreclosure sale scheduled for July 2, 2015 at 9:00 A.M. had been postponed because of the bankruptcy petition filed on July 1, 2015.

65.     In addition, Plaintiff is informed and believes that Defendant Grace Hsu alerted Defendant Angel and Defendant AIM through Defendant Angel that the postponement was due to a bankruptcy filing.

66.     Plaintiff is informed and believes that Defendant Grace Hsu actually was the successful bidder at a foreclosure sale of the Property in October 2014 for a higher amount than the $4,200,000 or $4,205,000 bid by Defendant AIM.

67.     Indeed, Plaintiff is informed and believes that subscription services, such as ForeclosureRadar.com, now known as PropertyRadar.com, already informed

its subscribers prior to 9:00 A.M. on July 7, 2015 not only of the transfer of title to Plaintiff but also that it was postponed due to a bankruptcy filing.

68.    As stated above, subsequent to July 7, 2015, Defendant Grace Hsu acquired 25% of Defendant's AIM's rights in the Property.

69.    On July 20, 2015, without first seeking relief from the automatic stay, Defendant Anchor Loans recorded a Deed of Trust and Assignment of Rents against the Property bearing Los Angeles County Recorder's Document Number 20150872046.

70.    Defendant Anchor acquired title insurance up through June 26, 2015.

71.    On September 17, 2015, without first seeking relief from the automatic stay, Defendant Anchor Assets caused to be recorded an Assignment of Deed of Trust against the Property bearing Los Angeles County Recorder's Document Number 20151149959.

72.    Plaintiff tendered via a purchase and sale transaction of the Property filed in her Chapter 11 Case full payment to Defendant PennyMac. However, Defendant PennyMac, Defendant AIM and Defendant MTC objected to such purchase and sale transaction.

73.    To the extent necessary and without conceding that any of the defendants holds the applicable promissory note or the beneficial interest thereof, Plaintiff hereby offers to tender and tenders full payment of all amounts due to

Defendant Pennymac or Defendant AIM, if any, in exchange for reconveying the Property to Plaintiff.

74.     Nevertheless, such tender is not required under the present circumstances because: Defendant PennyMac submitted two different promissory notes, which indicates that more than a simple allegation that Defendant PennyMac holds the promissory note is required for Defendant PennyMac to prove the validity of the underlying debt because the recorded assignment from Bank of America to Defendant PennyMac assigns to Defendant PennyMac only its interest in the deed of trust, not in the promissory note; Defendant MTC and Defendant PennyMac were aware of the notice of the bankruptcy stay and decided willfully, maliciously and without reasonable grounds in the truth of or propriety of the publication of a trustee's deed of trust to disobey the bankruptcy stay's injunctive effect on a non-judicial foreclosure sale in dereliction of their duty properly to perform the procedures set forth by Section 2924 of the California Civil Code; and, a review of all the documents produced by Defendant PennyMac reveals that Defendant PennyMac did not provide to the borrower, Mrs. Hsu, that notice required by Section 2923.55(b)(B) of the California Civil Code.

75.     Defendant PennyMac submitted to the Bankruptcy Court two different promissory notes, which indicates that more than a simple allegation that Defendant PennyMac holds the promissory note is required for Defendant PennyMac to prove

the validity of the underlying debt because the recorded assignment from Bank of America to Defendant PennyMac assigns to Defendant PennyMac Holdings only its interest in the deed of trust, not in the promissory note.  Therefore, Defendant PennyMac's foreclosure, through Defendant MTC, was improper as Defendant PennyMac Holdings does not hold the beneficial interest under the mortgage or deed of trust.

76.     Section 2924h(g) of the California Civil Code forbids collusion in bidding at foreclosure sale auctions and was violated by the aforementioned acts and omissions.

## FIRST CLAIM FOR RELIEF
## (FOR VIOLATION OF FEDERAL ANTI-TRUST STATUTES – 15 U.S.C. §§ 1, et seq. AGAINST ALL DEFENDANTS EXCEPT, AT THIS TIME, DEFENDANT PENNYMAC)

77.     The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

78.     The BID-RIGGING DEFENDANTS, made up of the three distinct sets of defendants (the Angel Defendants, the Cyprus Defendants and the Baer Defendants), testified that they participated at the foreclosure auction sale of the Property by communicating with a single bidder (Defendant Garcia) via telephone

(that is, used a facility of and in interstate commerce), and assumed a role integral to and inseparable from the interstate sale of property the foreclosure of which was initiated by an out of state entity (Defendant Pennymac) in that, among other things, title certificates, advertising, financing, and other related goods and services generated by transaction would pass state lines.  *U.S. v. Romer*, 148 F.3d 359 (1998) (case involving similar bid-rigging at real estate non-judicial foreclosure sale in Virginia).

79.     All the Defendants, except Defendant Pennymac and Defendant Pennymac Holdings (as to which Plaintiff currently does not have sufficient information regarding its participation to name as defendants as to this claim) contracted, combined, or conspired in restraint of trade or commerce among the several States.  *See, e.g., Romer*, 148 F.3d 359. Such contract, combination or conspiracy is illegal under 15 U.S.C. § 1, et seq.  Section 1 of Article 15 of the United States Code states:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

80.     Plaintiff has standing to prosecute such violation of the anti-trust laws under 15 U.S.C. § 15 because she has been injured by such activity in that she has incurred damages in an amount no less, and apparently much more, than the difference between $5,020,000 that was bidden on October 29, 2014 and $4,205,000 that was bidden on July 7, 2015 for her house.  Additionally, Plaintiff has standing under Section 2924k of the California Civil Code.

81.     The BID-RIGGING DEFENDANTS' activity reduced competition in that the BID-RIGGING DEFENDANTS agreed to refrain from bidding and instead submit a single bid through Defendant Garcia.

82.     The BID-RIGGING DEFENDANTS' activity caused injury to the Plaintiff in that the purchase price of the Property on July 7, 2015 was $4,200,000 while the purchase price nine months earlier was $5,020,000.  The reduction in the price paid at the July 7 auction is even more significant than the $880,000 loss in bid price in that the Property had increased in value as Defendants Baer and Cyprus, among others, conceded and it continues to increase in value.  Therefore, Plaintiff has been injured by an amount including an amount up to the difference between the value of the Property and the $4,200,000 purchase price paid on July 7, 2015 plus pre- and post-judgment interest.

83.     Such measure of damages is also dictated by the fact that the BID-RIGGING DEFENDANTS' activities prevented the sale by Plaintiff for $7.3 Million of the Property in October 2015 or earlier to a purchaser of her choice.

84.     Under the federal anti-trust statutes, Plaintiff is entitled to treble damages plus attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**(FOR VIOLATION OF CALIFORNIA ANTI-TRUST STATUTES – Cal.Bus.**
**& Prof. Code § 16700 et seq. – AGAINST ALL DEFENDANTS EXCEPT, AT**
**THIS TIME, DEFENDANT PENNYMAC)**

85.     The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

86.     The BID-RIGGING DEFENDANTS, specifically the three distinct sets of defendants (the Angel Defendants, the Cyprus Defendantsm the Baer Defendants), testified that they participated at the foreclosure auction sale of the Property by communicating with a single bidder (Defendant Garcia) via telephone (that is, used a facility of and in interstate commerce), who submitted the rigged bid(s) while the remaining BID-RIGGING DEFENDANTS and Defendant Grace Hsu refrained from bidding.

87.     All the Defendants, except Defendant Pennymac (as to which Plaintiff currently does not have sufficient information regarding its participation to name as

defendants as to this claim) contracted, combined, or conspired in restraint of trade or commerce. *See, e.g., Romer*, 148 F.3d 359 (case involving similar rig-bidding at real estate non-judicial foreclosure sale in Virginia under equivalent federal statutes). Such contract, combination or conspiracy is illegal under the Cartwright Act, Cal.Bus. & Prof. Code § 16700 et seq.

88.     Plaintiff has standing to prosecute such violation of the anti-trust laws because Plaintiff actually suffered injury in her property by reason of the aforementioned acts forbidden in the antitrust laws.

89.     The BID-RIGGING DEFENDANTS' activity reduced competition in that the BID-RIGGING DEFENDANTS agreed to refrain from bidding and agreed to and did present a single bid through Defendant Erika Garcia.

90.     The BID-RIGGING DEFENDANTS' activity caused injury to the Plaintiff in that the purchase price of the Property on July 7, 2015 was $4,200,000 while the purchase price nine months earlier was $5,020,000.  The reduction in the price paid at the July 7 auction is even more significant than the $880,000 difference in that the Property is in a prime location and it had increased in value as Defendants Baer and Cyprus, among others, conceded and it continues to increase in value. Therefore, Plaintiff has been injured by an amount including an amount up to the difference between the value of the Property and the $4,200,000 purchase price paid on July 7, 2015 plus pre- and post-judgment interest.

91.     Such measure of damages is also dictated by the fact that the BID-RIGGING DEFENDANTS' activities prevented the sale by Plaintiff for $7.3 Million of the Property in October 2015 or earlier to a purchaser of her choice.

92.     Under the California anti-trust statutes, Plaintiff is entitled to treble damages plus attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### (FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION STATUTES – Cal.Bus. & Prof. Code § 17200 et seq. – AGAINST ALL DEFENDANTS)

93.     The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

94.     All the Defendants, except Defendant Pennymac (as to which Plaintiff currently does not have sufficient information regarding its participation to name as defendants as to this claim) contracted, combined, or conspired in restraint of trade or commerce as set forth above. *See, e.g., Romer*, 148 F.3d 359 (case involving similar rig-bidding at real estate non-judicial foreclosure sale in Virginia under equivalent federal statutes). Such contract, combination or conspiracy is illegal under the Cartwright Act, Cal.Bus. & Prof. Code § 16700 et seq.  Such contract, combination or conspiracy is also illegal under 15 U.S.C. § 1, et seq. and, in addition to being a private right of action, subjects the offending parties to a monetary fine

and/or imprisonment. Furthermore, such collusive bidding is also illegal under California Civil Code Section 2924h(g) and, in addition to being a private right of action, subjects the offending party to a monetary fine and/or imprisonment.

95.    Plaintiff has standing to prosecute such violation of the anti-trust laws because Plaintiff actually suffered injury in her property by reason of the aforementioned acts forbidden in the antitrust laws.

96.    The BID-RIGGING DEFENDANTS' activity reduced competition in that the BID-RIGGING DEFENDANTS agreed to refrain from bidding and agreed to and did present a single bid through Defendant Erika Garcia.

97.    The BID-RIGGING DEFENDANTS' activity caused injury to the Plaintiff in that the purchase price of the Property on July 7, 2015 was $4,200,000 while the purchase price nine months earlier was $5,020,000.  The reduction in the price paid at the July 7 auction is even more significant than the $880,000 difference in that the Property is in a prime location and it had increased in value as Defendants Baer and Cyprus, among others, conceded and it continues to increase in value. Therefore, Plaintiff has been injured by an amount including an amount up to the difference between the value of the Property and the $4,200,000 purchase price paid on July 7, 2015 plus pre- and post-judgment interest.

98.   Such measure of damages is also dictated by the fact that the BID-RIGGING DEFENDANTS' activities prevented the sale by Plaintiff for $7.3 Million of the Property in October 2015 or earlier to a purchaser of her choice.

99.   Since the Defendants' acts and omissions are illegal, they also violate California's unfair competition statutes.

100.   Under the unfair competition statutes, Plaintiff is entitled to injunctive relief, damages plus attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
## (FOR VIOLATION OF THE AUTOMATIC STAY AGAINST ALL DEFENDANTS)

101.   The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

102.   Defendant MTC, with assistance from Defendant Harmony which provided erroneous information, have caused the unauthorized transfer of Plaintiff's Property through that Trustee's Deed Upon Sale issued while the Bankruptcy Stay under Section 362 of the Bankruptcy Code prevented the Foreclosure Sale and the issuance of the Trustee's Deed Upon Sale.

103.   Even when the automatic stay has been annulled, though subject to a pending appeal, a violation of the automatic may still be prosecuted as ruled by *In re*

*Williams*, 323 B.R. 691 (9th Cir. 2005), citing *Worden v. Searls*, 121 U.S. 14 (1887);

*U.S. v. United Mine Workers of America*, 330 U.S. 258, 294 (1947) and *Walker v.*

*City of Birmingham*, 388 U.S. 307 (1967); In re Aheong, 276 B.R. 233 (BAP 9th Cir.

2002) (violation of automatic stay may be decided even after the case is closed).

104.   Defendant AIM has made claim to ownership of the Property by that

Trustee's Deed Upon Sale issued by Defendant MTC.

105.   Defendant Grace Hsu has made claim to ownership of the Property as a

25% owner by that Trustee's Deed Upon Sale issued by Defendant MTC.

106.   Defendant Anchor Loans has recorded a deed of trust against the

Property.

107.   Defendant Anchor Assets has received an assignment of the deed of

trust recorded by Anchor Loans against the Property.

108.   In obtaining a property interest in the Property, recording a deed of

trust, and receiving an assignment of such deed of trust despite actual and/or

constructive notice of the automatic stay, Defendants violated the automatic stay and

acted fraudulently, maliciously and in order to oppress Plaintiff and prevent her from

enjoying the possession and control of her Property, such that defendants should be

liable in punitive damages to plaintiff in an amount to be proven and shown at the

time of trial.

## FIFTH CLAIM FOR RELIEF
## (FOR TURNOVER UNDER 11 U.S.C. § 542 AGAINST ALL DEFENDANTS)

109.   The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

110.   Defendant MTC, with assistance from Defendant Harmony which provided erroneous information, have caused the unauthorized transfer of Plaintiff's Property through that Trustee's Deed Upon Sale issued while the Bankruptcy Stay under Section 362 of the Bankruptcy Code prevented the Foreclosure Sale and the issuance of the Trustee's Deed Upon Sale.

111.   Defendant AIM has made claim to ownership of the Property by that Trustee's Deed Upon Sale issued by Defendant MTC.

112.   Defendant Grace Hsu has made claim to ownership of the Property as a 25% owner by that Trustee's Deed Upon Sale issued by Defendant MTC.

113.   Defendant Anchor Loans has recorded a deed of trust against the Property.

114.   Defendant Anchor Assets has received an assignment of the deed of trust recorded by Anchor Loans against the Property.

115.   In obtaining a property interest in the Property, recording a deed of trust, and receiving an assignment of such deed of trust despite actual and/or

constructive notice of the automatic stay, Defendants have exercised control over the Plaintiff's estate assets without prior authorization by the Debtor or this Court.

116.   Defendants must turnover the Plaintiff's estate assets to Plaintiff pursuant to Section 542 of the Bankruptcy Code.

## SIXTH CLAIM FOR RELIEF
## (FOR AVOIDANCE OF UNAUTHORIZED POST-PETITION TRANSFER OF ESTATE ASSETS UNDER 11 U.S.C. § 544 AND CALIFORNIA CIVIL CODE §§ 3439, ET SEQ. AGAINST ALL DEFENDANTS)

117.   The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

118.   Defendant AIM has made claim to ownership of the Property by that Trustee's Deed Upon Sale issued by Defendant MTC.

119.   Defendant Grace Hsu has made claim to ownership of the Property as a 25% owner by that Trustee's Deed Upon Sale issued by Defendant MTC.

120.   Defendant Anchor Loans has recorded a deed of trust against the Property.

121.   Defendant Anchor Assets has received an assignment of the deed of trust recorded by Anchor Loans against the Property.

122.   In obtaining a property interest in the Property, recording a deed of trust, and receiving an assignment of such deed of trust despite actual and/or

constructive notice of the automatic stay, Defendants have received a transfer of the Plaintiff's bankruptcy estate assets without prior authorization and for less than present fair equivalent value as the transfer occurred in exchange for $4,200,000 to $4,205,000 either amount of which is more than $3 Million less than the fair equivalent value of the Property.

123.   The foregoing transfers are hereinafter referred to as the "Transfers" were made within one year of the Petition Date.

124.   The Transfers each were a "transfer" within the meaning of 11 U.S.C. § 101(54) and Section 3439.01(i) (the "Transfers").

125.   Present creditors of the Debtor existed at the time of the Transfers that still remain unpaid as of the Petition Date.

**SEVENTH CLAIM FOR RELIEF**
**(FOR AVOIDANCE OF UNAUTHORIZED POST-PETITION TRANSFER OF ESTATE ASSETS UNDER 11 U.S.C. § 549 AGAINST ALL DEFENDANTS)**

126.   The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

127.   **Under Section 549 of the bankruptcy Code:**

**(a)** Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

**(1)** that occurs after the commencement of the case; and
**(2)**

    **(A)** that is authorized only under section 303(f) or 542(c) of this title; or

    **(B)** that is not authorized under this title or by the court.

**(b)** In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

**(c)** The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

128.  Defendant MTC, with assistance from Defendant Harmony which provided erroneous information, have caused the unauthorized transfer of Plaintiff's Property through that Trustee's Deed Upon Sale issued while the Bankruptcy Stay under Section 362 of the Bankruptcy Code prevented the Foreclosure Sale and the issuance of the Trustee's Deed Upon Sale.

129. Defendant AIM has made claim to ownership of the Property by that Trustee's Deed Upon Sale issued by Defendant MTC.

130. Defendant Grace Hsu has made claim to ownership of the Property as a 25% owner by that Trustee's Deed Upon Sale issued by Defendant MTC.

131. Defendant Anchor Loans has recorded a deed of trust against the Property.

132. Defendant Anchor Assets has received an assignment of the deed of trust recorded by Anchor Loans against the Property.

133. In obtaining a property interest in the Property, recording a deed of trust, and receiving an assignment of such deed of trust despite actual and/or constructive notice of the automatic stay, Defendants have received a transfer of the Plaintiff's bankruptcy estate assets without prior authorization and for less than present fair equivalent value as the transfer occurred in exchange for $4,200,000 to $4,205,000 either amount of which is more than $3 Million less than the fair equivalent value of the Property.

134. Defendants do not fall under any exception to avoidance provided by Section 549 of the Bankruptcy Code.

135. Therefore, under the law, the Court has no discretion but to set aside the transfer of the Property in fee or as security to Defendants pursuant to Section 549 of the Bankruptcy Code.

## EIGHTH CLAIM FOR RELIEF
### (FOR PRESERVATION UNDER 11 U.S.C. § 550 OF AVOIDED UNAUTHORIZED POST-PETITION TRANSFER OF ESTATE ASSETS UNDER 11 U.S.C. § 549 AGAINST ALL DEFENDANTS)

136.   The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

137.   The Property, after all the transfers to or for the benefit of Defendants are avoided under section 544 and 549 should be preserved for the benefit of the Plaintiff's bankruptcy estate.

## NINTH CLAIM FOR RELIEF
### (SLANDER OF TITLE AGAINST ALL DEFENDANTS)

138.   The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

139.   Defendant MTC, with assistance from Defendant Harmony, have caused the unauthorized transfer of Plaintiff's Property through that Trustee's Deed Upon Sale issued while the Bankruptcy Stay under Section 362 of the Bankruptcy Code prevented the Foreclosure Sale and the issuance of the Trustee's Deed Upon Sale.

140.   Defendant AIM has made claim to ownership of the Property by that Trustee's Deed Upon Sale issued by Defendant MTC.

141.   Defendant Grace Hsu has made claim to ownership of the Property as a 25% owner by that Trustee's Deed Upon Sale issued by Defendant MTC.

142.   Defendant Anchor Loans has recorded a deed of trust against the Property.

143.   Defendant Anchor Assets has received an assignment of the deed of trust recorded by Anchor Loans against the Property.

144.   In obtaining a property interest in the Property, recording a deed of trust, and/or receiving an assignment of such deed of trust despite actual and/or constructive notice of the automatic stay, Defendants have slandered the title of the Plaintiff's bankruptcy estate assets without prior authorization.

145.   Defendants have caused Plaintiff damages in an amount to be proven at trial.

**TENTH CLAIM FOR RELIEF**
**(QUIET TITLE AGAINST ALL DEFENDANTS)**

146.   The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

147.   Defendant MTC, with assistance from Defendant Harmony, have caused the unauthorized transfer of Plaintiff's Property through that Trustee's Deed Upon Sale issued while the Bankruptcy Stay under Section 362 of the Bankruptcy Code prevented the Foreclosure Sale and the issuance of the Trustee's Deed Upon Sale.

148.   Defendant AIM has made claim to ownership of the Property by that Trustee's Deed Upon Sale issued by Defendant MTC.

149.   Defendant Grace Hsu has made claim to ownership of the Property as a 25% owner by that Trustee's Deed Upon Sale issued by Defendant MTC.

150.   Defendant Anchor Loans has recorded a deed of trust against the Property.

151.   Defendant Anchor Assets has received an assignment of the deed of trust recorded by Anchor Loans against the Property.

152.   In obtaining a property interest in the Property, recording a deed of trust, and/or receiving an assignment of such deed of trust despite actual and/or constructive notice of the automatic stay, Defendants have caused the Plaintiff to have to incur expenses to protect her assets.

153.   Plaintiff is the legal owner of the Property.

154.   Plaintiff seeks to quiet title against the claims of Defendants and anyone else claiming interest in the Property.  Defendants and any successors or assignees

have no right to title or interest in the Property and no right to entertain any rights of ownership, including rights of possession or an interest in the Property as security or collateral for any lending transaction.

155.   Plaintiff seeks to quiet title as of the entry of a judgment under this complaint.  Plaintiff seeks a judicial declaration that the title to the Property is vested in Plaintiff alone and that Defendants and each of them be declared to have no estate, right, title or interest in the Property and that Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Property.

156.   As a result of the fraudulent and wrongful conduct alleged herein, the Trustee's Deed Upon Sale, the Deed of Trust and Assignment of Rents for the benefit of Defendant Anchor Loans and the assignment to Defendant Anchor Assets are void and invalid.  Therefore, the Property is still solely Plaintiff's property subject only to recordation of the grant deed clarifying Plaintiff's complete fee simple absolute interest in the Property.

157.   Alternatively, if any of the Trustee's Deed Upon Sale, the Deed of Trust and Assignment of Rents for the benefit of Defendant Anchor Loans and the assignment to Defendant Anchor Assets are not void and/or invalid or voidable, the Trustee's Deed Upon Sale was obtained in a foreclosure sale auction through an irregular foreclosure sale in that it took place even though the automatic stay from

Plaintiff's case was in effect as Defendant MTC was fully aware and, in any event, through collusive bidding among the BID-RIGGING DEFENDANTS which was condoned by Defendant MTC as agent for Defendant Pennymac and resulted in a wholly inadequate purchase price of $4,200,000 instead of the $5,020,000 obtained almost nine (9) months earlier in a real estate market commonly known to be rising since October 29, 2014, especially for properties in coveted locations, such as the Property.

158.   Accordingly, the Court should rule that the Property remains Plaintiff's property and award consequential damages as proven at trial, but not less than $880,000 plus attorneys' fees and costs which are trebled by other claims asserted in this complaint.

## ELEVENTH CLAIM FOR RELIEF
## (VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2924h(g) AGAINST FORECLOSING DEFENDANTS)

159.   The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

160.   Section 2924h(g) states:

> It shall be unlawful for any person, acting alone or in concert with others, (1) to offer to accept or accept from another, any consideration of any type not to bid, or (2) to fix or restrain bidding in any manner, at a sale of property conducted pursuant to a power of sale in a deed of trust or

mortgage. However, it shall not be unlawful for any person, including a trustee, to state that a property subject to a recorded notice of default or subject to a sale conducted pursuant to this chapter is being sold in an "as☐is" condition.
In addition to any other remedies, any person committing any act declared unlawful by this subdivision or any act which would operate as a fraud or deceit upon any beneficiary, trustor, or junior lienor shall, upon conviction, be fined not more than ten thousand dollars ($10,000) or imprisoned in the county jail for not more than one year, or be punished by both that fine and imprisonment.

161.   Defendants Brian Angel, Brett Cyprus, and Peter Baer, on their own behalf or on behalf of entities with or of which they are co-conspirators (including Defendant Grace Hsu), owners, principals, officers and/or employees communicated with each other by means of interstate commerce, i.e., mobile telephone communications, and with Defendant Garcia, a bidder employed by 6 Angels, LLC (which is the organization to which Brian Angel belongs with his parents and siblings) and/or Defendant DCB to present a single bid for the Property.  According to Defendant Garcia, Defendant DCB cuts her paychecks but shares the same office as 6 Angels, LLC. The defendants agreed to make a single bid for the Property despite the fact that they each had separate bidders present at the auction, Defendants King and Perez. After she prevailed at the auction for the bid amount of $4,200,000 (or $4,205,000), the bidders for Defendants Cyprus and Baer, Defendants King and Perez, turned over to Defendant Garcia money in the form of cashiers' checks from their bags to make up the difference between the $3,000,000

Erika Garcia held with her and $4,200,000. In addition, the BID-RIGGING DEFENDANTS conspired to and agreed that Defendant Garcia would bid for the Property and Defendant Grace Hsu, like the other BID-RIGGING DEFENDANTS, agreed to let Defendant Garcia bid for the Property and agreed to refrain from bidding, like she had done in October 2014, to purchase the Property for a lower price in exchange for giving Defendant Grace Hsu a one quarter ownership of the Property, which they did on or about the same day of the purchase.

162.   The BID-RIGGING DEFENDANTS' activity caused injury to the Plaintiff in that the purchase price of the Property on July 7, 2015 was $4,200,000 while the purchase price nine months earlier was $5,020,000.  The reduction in the price paid at the July 7 auction is even more significant than the $880,000 difference in that the Property is in a prime location and it had increased in value as Defendants Baer and Cyprus, among others, conceded and it continues to increase in value. Therefore, Plaintiff has been injured by an amount including an amount up to the difference between the value of the Property and the $4,200,000 purchase price paid on July 7, 2015 plus pre- and post-judgment interest.  Such measure of damages is also dictated by the fact that the BID-RIGGING DEFENDANTS' activities prevented the sale by Plaintiff for $7.3 Million of the Property in October 2015 or earlier to a purchaser of her choice.

163.   Under the California anti-trust statutes, Plaintiff is entitled to treble damages plus attorneys' fees and costs.

## TWELFTH CLAIM FOR RELIEF
## (VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2924(a)(6) AGAINST FORECLOSING DEFENDANTS)

164.   The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

165.   Section (a)(6) of Section 2924 of the California Civil Code states:

> No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

166.   Defendant PennyMac submitted to the Bankruptcy Court two different promissory notes, which indicates that more than a simple allegation that Defendant PennyMac holds the promissory note is required for Defendant PennyMac to prove the validity of the underlying debt because the recorded assignment from Bank of America to Defendant PennyMac assigns to Defendant PennyMac only its interest in the deed of trust, not in the promissory note.  Therefore, Defendant PennyMac's

foreclosure, through Defendant MTC, was improper as Defendant PennyMac does not hold the beneficial interest under the mortgage or deed of trust.

167.  Plaintiff has suffered and continues to suffer damages in an amount according to proof at trial.

### THIRTEENTH CLAIM FOR RELIEF
### (VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.55(b)(B) AGAINST FORECLOSING DEFENDANTS)

168.  The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

169.  Section 2923.55 does not allow that a notice of default be recorded unless its provisions have been satisfied, i.e.:

> (a) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until all of the following:
> (1)The mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b).
> ...
> (b) (1) As specified in subdivision (a), a mortgage servicer shall send the following information in writing to the borrower:
> ...
> (B)  A statement that the borrower may request the following:
> (i)  A copy of the borrower's promissory note or other evidence of indebtedness.
> (ii)  A copy of the borrower's deed of trust or mortgage.
> (iii)  A copy of any assignment, if applicable, of the borrower's mortgage or deed of

> trust required to demonstrate the right of the mortgage servicer to foreclose.
> (iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

170. A review of all the documents produced by Defendant PennyMac reveals that Defendant PennyMac did not provide to the borrower, Mrs. Hsu, that notice required by Section 2923.55(b)(B) of the California Civil Code.

171. Plaintiff has suffered and continues to suffer damages in an amount according to proof at trial.

## FOURTEENTH CLAIM FOR RELIEF
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS)

172. The Plaintiff incorporates by reference each preceding allegation as if set forth here in full.

173. Defendant MTC, with assistance from Defendant Harmony, have caused the unauthorized transfer of Plaintiff's Property through that Trustee's Deed Upon Sale issued while the Bankruptcy Stay under Section 362 of the Bankruptcy Code prevented the Foreclosure Sale and the issuance of the Trustee's Deed Upon Sale.

174. Such conduct is outrageous and unprivileged.

175.   The defendants engaged in the aforementioned conduct in reckless disregard of the probability of causing plaintiff emotion distress

176.   The Plaintiff was and continues to be present at the time that the outrageous conduct occurred.

177.   The defendants knew that the Plaintiff was present.

178.   The Plaintiff has suffered and continues to suffer severe emotional distress requiring treatment by medical doctors.

179.   The Defendants' outrageous conduct was a cause of the emotional distress suffered by the Plaintiff.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a.   For the avoidance of any and all post-Petition transfers in any form of the fee or as collateral of the Property declaring legal and equitable title to rest completely in Plaintiff;

b.   For reconveyance of the Property to Plaintiff;

c.   For turnover of the Property to Plaintiff;

d.   For a declaration that the Property belongs to Plaintiff and Plaintiff alone;

e.  For general and special damages in an amount to be proven at trial, but, in no event, less than $1,000,000;

f.  For punitive damages;

g. For pre and post judgment interest on damages at the legal rate per annum;

h. For the award to Plaintiff of her attorney's fees and costs of suit;

i. For <u>treble</u> damages;

j. For an order prohibiting Defendant PennyMac or its successors or assigns from recovering or otherwise adding any attorneys' fees and costs of suit to the balance of such defendant's claim against the Property;

k. For injunctive relief enjoining the Defendants from exercising possession or control over the Property or otherwise interfering with the Plaintiff's quiet enjoyment of the Property, including through her exercise of her right to sell such Property to a purchaser of her choice so long as obligations secured by the Property as permitted by this Court are satisfied as is the general practice in a real estate purchase and sale transaction; and,

l. For such other and further relief as the court finds just and proper.

1

Dated:  January 22, 2016

2

3

4

5

6

Dated:  January 22, 2016

7

8

9

10

11

12

13.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORANTES LAW FIRM, P.C.

By:  */s/ Giovanni Orantes*

    Giovanni Orantes, Esq.

Counsel for Plaintiff, Tzu Ling Hsu also known as Jenny Hsu

KOEBEL LAW OFFICES

By:  */s/ Philip Koebel*

    Philip E. Koebel, Esq.

Counsel for Plaintiff, Li Hsiu-Chu Hsu

**COMPLAINT**

1

## VERIFICATION

2

3   State of California, County of Los Angeles

4

5       I, Tzu Ling Hsu, also known as Jenny Hsu, have read the allegations in the

6   complaint, including the allegations for the quiet title action. I am the plaintiff in

7   such action and make this verification for that reason. The matters stated in the

8   complaint, including those related to the claim for quiet title, are true of my own

9   knowledge except as to those matters which are stated on information and belief, and

10  as to those I believe them to be true. I declare under penalty of perjury under the

11  laws of the State of California and of the United States of America that the foregoing

12  is true and correct and that this verification was executed on January 22, 2016.

13

14

15

16                                          Tzu Ling Hsu a.k.a. Jenny Hsu

17

18

19

20

21

22

23

24

25

26

27

28